DA 10-0509

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 71N

MICHAEL BELL, PERSONAL REPRESENTATIVE
FOR THE ESTATE OF JASON BELL, deceased,

        Plaintiff and Appellant,

   v.

LARRY CUMMINGS, CARRIE CUMMINGS,
individually and doing business as WHITE
BIRCH MOTEL & RV PARK, and JOHN
DOES ONE THROUGH TEN,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV-08-117B
                Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Garry D. Seaman, Seaman Law Firm, Kalispell, Montana

        For Appellee:

                Paul A. Sandry, Johnson, Berg, McEvoy & Bostock, PLLP,
                Kalispell, Montana

                          Submitted on Briefs:  March 23, 2011

                                    Decided:  April 12, 2011

Filed:

                _____
                              Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Michael Bell, as personal representative for the estate of his brother, Jason Bell (the Estate), appeals the Judgment of the District Court for the Eleventh Judicial District, Flathead County, in favor of the Defendants.  We affirm.

¶3      The Estate raises the following issue on appeal:  Whether the defense of assumption of the risk is treated like the defense of contributory negligence and apportioned as under the comparative negligence statute when a person carries on an abnormally dangerous activity and is found to be strictly liable for harm.

## Factual and Procedural Background

¶4      During the latter part of December 2007, Larry Cummings, the owner of the White Birch Motel & RV Park (the Motel), dug a trench behind the Motel in an effort to repair a water leak.  The trench was twenty to thirty feet in length and varied from two to six feet in depth.  The ground near the trench was snow covered with rough footing.

¶5      In the early morning hours of January 1, 2008, Jason Bell was found trapped and unresponsive in the trench in an area approximately sixteen inches deep.  His leg was lodged in a hole in the top of an abandoned septic tank.  Bell had to be extricated from the hole by emergency fire and medical personnel.  He was transported to Kalispell

2

Regional Medical Center for treatment. Because of complications from frostbite, Bell's left arm had to be amputated below the elbow and his left leg had to be amputated below the knee. Bell also received dialysis due to organ failure.

¶6 Bell filed this action against Cummings on January 25, 2008, alleging, among other things, that Cummings was strictly liable for harm to Bell because the excavation at the Motel was an inherently dangerous activity. The Complaint also alleged that Cummings was negligent because he failed to place any flagging, fencing, or covering at the trench and failed to warn Bell of the dangerous condition.

¶7 In his Answer, Cummings argued that Bell knew that the trench was being excavated because Bell had been living at the Motel for about two months prior to the accident. In fact, Cummings maintained at trial that Bell asked if he could participate in the excavation in exchange for the rent money Bell owed Cummings. And, while Bell had claimed in his Complaint that the lighting in the area was poor, Cummings contended that the entire area of the excavation was illuminated by several large mercury vapor lights mounted on light poles nearby.

¶8 Cummings also claimed that Bell's injuries were the result of his own negligence. Hospital personnel ran a toxicology screen on Bell soon after he arrived at the hospital. The toxicology screen indicated the presence of methamphetamine (meth) and phencyclidine (PCP) in Bell's system. However, the screening could not tell the *amount* of meth or PCP in Bell's system. Bell died on March 16, 2010, in Libby, Montana, and his estate was substituted as plaintiff in this action.

3

¶9 Prior to and during trial, Dr. Douglas Rollins, Professor of Pharmacology and Toxicology at the University of Utah, opined that Bell was unconscious in the trench because of his use of illicit drugs before the accident and not from any fall. Dr. Rollins further opined that absent the use of illicit drugs, Bell would have been able to extricate himself from the trench. Contrary to Dr. Rollins' contentions, Firefighter and EMT Jaime Boyce, who assisted in extricating Bell from the trench, asserted that Bell's leg was wedged in the septic tank in such a manner that Bell could not have gotten himself out.

¶10 Toward the end of trial, the District Court determined that digging the trench at the Motel "constituted an abnormally dangerous activity and/or an ultra hazardous condition." Thus, the court determined as a matter of law that Cummings was strictly liable. After discussion with counsel for both parties, the court gave the following instructions to the jury:

> Instruction No. 7: The Court has determined that defendants carried on an abnormally dangerous activity and are subject to liability for harm to Jason Bell resulting from that activity.
> Instruction No. 7a: Defendants' abnormally dangerous activity was a cause of Jason Bell's injuries if it was a substantial factor in bringing them about.
> Instruction No. 8: To establish that Jason Bell assumed the risk, the Defendant must prove that Jason Bell had subjective knowledge of the danger and then voluntarily and unreasonably exposed himself to that danger.
> Instruction No. 9: Assumption of risk by Jason Bell does not bar his recovery unless his responsibility for the injury is greater than the defendants'. However, any damages you award will be reduced by the Court according to the percentage of Jason Bell's responsibility as determined by you.
> You must determine what percentage of the total cause of Jason Bell's injuries, damages and death, if applicable, is attributable to Jason Bell's assumption of the risk.

4

¶11 The jury found that the abnormally dangerous activity of trenching and leaving an uncovered hole in the abandoned septic tank at the Motel was the cause of Bell's injuries. The jury also found that Bell assumed the risk of injury. Consequently, the jury apportioned the total cause between the parties at 40% for Cummings and 60% for Bell. Because the jury apportioned more than 50% of the total cause to Bell, the jury did not determine the amount of damages.

¶12 In its Judgment entered September 22, 2010, the District Court ordered that the Estate take nothing and that the action be dismissed on the merits. The court also pointed out that in his Motion for Judgment, Cummings waived his right to recover from the Estate his costs of this action. The Estate appeals.

**Discussion**

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions.

¶14 The Estate argues that the District Court erred when it applied the defense of assumption of the risk and apportionment of liability after it determined that Cummings was carrying on an abnormally dangerous activity and that Cummings was strictly liable for the harm to Bell. The Estate further argues that assumption of the risk and "contributory fault" should not have been submitted to the jury.

¶15 Cummings argues that the Estate failed to preserve its objection to the application of the assumption of risk defense to its claim in strict liability, and that, in actuality, the Estate acquiesced in the idea that the assumption of risk defense was available to

Cummings. Cummings also argues that regardless of the Estate's failure to object, the court properly instructed the jury on the assumption of risk defense.

¶16 During the settling of jury instructions, the following discussion took place:

> MR. SEAMAN (counsel for the Estate): Well, I don't think that you can apportion liability on a strict liability case, that's what I think.
> THE COURT: You mean you think assumption of risk is not a defense?
> MR. SEAMAN: *I think it's a defense*, but I don't think that you can apportion liability under the assumption of risk.
> THE COURT: So if it's a defense how do we instruct the jury on it?
> MR. SEAMAN: I think what you have to say is that if you find that the plaintiff assumed the risk then the plaintiff is barred from recovery, but if you mind that – find that he did not assume the risk then the plaintiff recovers whatever his damages are. [Emphasis added.]

¶17 Based on the foregoing, we conclude that not only did counsel for the Estate fail to preserve his objection to the application of the assumption of risk defense to the Estate's claim in strict liability, but, in actuality, counsel acquiesced in the idea that the assumption of risk defense was available to Cummings. "It is a well-established maxim of law that 'acquiescence in error takes away the right of objecting to it.' " *Babcock v. Berg, Lilly, Andriolo & Tollefson, PC*, 2003 MT 111, ¶ 38, 315 Mont. 364, 69 P.3d 1145 (citing § 1-3-207, MCA).

¶18 Accordingly, we hold, on the procedural posture of this case, that the District Court fully and fairly instructed the jury on the law applicable to the case. *See Peterson v. St. Paul Fire and Marine Ins.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904.

¶19 Affirmed.

/S/ JAMES C. NELSON

We Concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE